**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Kushinda Furaha Zeleke, | No. 25-cv-2784 (KMM/SGE) |
| Plaintiff, | |
| v. | |
| | **ORDER** |
| Phyllis Wheatley Community Center; Metropolitan Alliance of Connected Communities; and Corporate Technologies,[1] | |
| Defendants. | |

---

In this employment-discrimination action, Plaintiff Kushinda Furaha Zeleke alleges

that his prior employer, Defendant Phyllis Wheatley Community Center (PWCC), and

other entities that PWCC works with discriminated against him on the basis of his disability

in violation of federal and state law. The matter is before the Court on Defendants' Motion

to Dismiss the Second Amended Complaint. (Dkt. 37.) For the reasons discussed below,

the Motion is granted, and the matter is dismissed.

**BACKGROUND**

In August 2021, Mr. Zeleke began working at PWCC, a Minneapolis organization,

as an IT Operations and Technical Skills Coordinator. (Dkt. 36-1 (Second Am. Compl. or

"SAC") ¶¶ 11–12.) In or around March 2022, Mr. Zeleke was diagnosed with multiple

---

[1] For the first time in the Second Amended Complaint, Mr. Zeleke claims to "add[] Defendant Corporate Technologies, Inc. . . . based on newly discovered facts[.]" (Dkt. 36-1 ¶ 3.)

mental health conditions that "substantially limit one or more life major life activities" and for which he has been receiving ongoing treatment. (*Id.* ¶¶ 16–17; Dkt. 1 at ¶¶ 6–7.) In August 2022, Mr. Zeleke "disclosed to PWCC his disability-related limitations and requested reasonable accommodation." (SAC ¶ 19.) PWCC granted his request and agreed to a hybrid schedule that allowed for some remote work. (*Id.* ¶ 20.) But, according to Mr. Zeleke, PWCC "did not consistently implement or maintain" the accommodation and "disregarded [it] on multiple occasions." *(Id.* ¶ 21.) Then, in 2024, PWCC "conditioned compensation improvement . . . on [him] relinquishing the approved accommodation." (*Id.* ¶ 23.) When Mr. Zeleke refused, PWCC "increased scrutiny of [his] performance, intensified micromanagement, and assigned [him] additional duties and responsibilities outside [of his] core IT role." (*Id.* ¶ 24.)

In October 2024, Mr. Zeleke requested "intermittent leave and a modified remote-work accommodation to address the medical and caregiving needs associated with [his] mother's condition," which his supervisor granted. (*Id.* ¶¶ 26–27.) In connection with the accommodation, a MACC employee contacted Mr. Zeleke and provided him with information about the "non-FMLA" (Family and Medical Leave Act) leave process. (*Id.* ¶ 28.) Mr. Zeleke alleges that the MACC employee "fail[ed] to provide clear written documentation reflecting eligibility determinations, designation, or rights and responsibilities consistent with the intermittent family-medical leave [he] requested." (*Id.* ¶ 28.) Given his understanding that MACC was acting on PWCC's behalf, Mr. Zeleke submitted his paperwork to MACC in December 2024 but did not hear back about his request. (*Id.* ¶¶ 30–32.) Nevertheless, he continued to work in a reduced capacity. (*Id.* ¶ 33.)

Although he "perform[ed] work as directed and remained in communication consistent with the approvals and expectations that PWCC leadership conveyed to him" throughout November and December 2024, he faced "intensified micromanagement" from PWCC that exacerbated his disability-related symptoms. (*Id.* ¶¶ 34–35.)

On January 3, 2025, PWCC terminated Mr. Zeleke's employment, citing "no call/no show, failure to communicate, and/or job abandonment" as the reasons for his termination. (*Id.* ¶ 36 (quotations omitted).) He alleges that these reasons are "false and pretextual," used by PWCC "to mask unlawful disability discrimination, interference with protected leave rights, and retaliation for protected activity." (*Id.* ¶¶ 37–38, 40–42.)

Mr. Zeleke subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) as required before bringing a lawsuit under the Americans with Disabilities Act (ADA). (Dkt. 29-1 (Charge of Discrimination form).[2]) On March 26, 2025, the EEOC issued to Mr. Zeleke a "Determination and Notice of Rights" (Notice of Right to Sue), which stated, "If you choose to file a lawsuit against [PWCC] on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you . . . view this document." (Dkt. 1-1 at 1 (emphasis in original).) Mr. Zeleke received the notice electronically that same day. (Dkt. 31-1 ¶ 4.)

---

[2] On a motion to dismiss, "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and quotation marks omitted). The Court finds that the Charge of Discrimination and the Notice of Right to Sue are embraced by the pleadings.

3

On July 3, 2025, Mr. Zeleke initiated this lawsuit, after having attempted to file a lawsuit in state court.[3] (*See* Dkt. 1.) On February 2, 2026, after Defendants' Motion to Dismiss his Amended Complaint had been fully briefed, Mr. Zeleke sought to file a Second Amended Complaint, which the Court allowed. (*See* Dkt. 43.) The Second Amended Complaint asserts six claims: (1) an ADA claim for disability discrimination; (2) an ADA claim for failure to accommodate; (3) a Minnesota Human Rights Act (MHRA) claim for disability discrimination; (4) an MHRA claim for failure to accommodate; (5) an FMLA claim; and (6) a claim under the Computer Fraud and Abuse Act (CFAA). (*See generally* Dkt. 36-1.) Defendants filed a Motion to Dismiss the Second Amended Complaint, which is presently before the Court. (Dkt. 37.)

## DISCUSSION

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts must be stated with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, courts must

---

[3] On June 20, 2025, a few days before the ninety-day filing period had expired, Mr. Zeleke attempted to file an action based on the allegations raised here in state court. (Dkt. 31-1 ¶¶ 6–7, 9; *see also* Dkt. 29-2 (state-court docket).) However, the matter was "administratively closed shortly thereafter due to procedural and filing-fee issues, before service could occur." (Dkt. 31-1 ¶ 12; *see also* Dkt. 27 at 6 n.2 (explaining that Defendants were unable to access Mr. Zeleke's filing in state court because "the case was never opened").)

assume that all factual allegations in the complaint are true and make all reasonable inferences from those facts in the light most favorable to the plaintiff. *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024). But courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024) (quoting *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019)).

Generally, when considering a motion to dismiss, courts "must ignore materials outside of the pleadings[.]" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts may "additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[.]'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)). Consideration of these materials does not require a court to convert a motion to dismiss into a motion for summary judgment. *Id.*

## I.    ADA Claims (Counts 1 and 2)

Defendants argue that both of Mr. Zeleke's claims under the ADA must be dismissed. Their primary argument for dismissal is that these claims are time-barred because Mr. Zeleke initiated this action over ninety days after he received the EEOC's Notice of Right to Sue. The Court agrees.

"Under the ADA, plaintiffs must exhaust their administrative remedies by filing a charge with the EEOC before filing a lawsuit against an employer." *Weatherly v. Ford*

5

*Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021) (citing 42 U.S.C. § 2000e-5(e)(1)) (other citations omitted). The EEOC then issues a notice, commonly referred to as a "right to sue letter" or "notice of dismissal." Upon receiving the notice from the EEOC, the plaintiff has ninety days to bring a civil action. *Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 736 (8th Cir. 2018). "This ninety-day period constitutes a limitations period that bars a suit that is not filed within that time." *Id.*

There is no dispute that Mr. Zeleke received the EEOC's notice on March 26, 2025, and that the ninety-day deadline allowed until June 24, 2025 for him to timely bring this action. (Dkt. 31 at 2 ("Plaintiff received his EEOC Right-to-Sue notice electronically on March 26, 2025."); *see also* Dkt. 31-1 ¶¶ 3–4.) However, Mr. Zeleke did not file his initial Complaint in this action until July 3, 2025, after the deadline had passed. (*See* Dkt. 1.) Unfortunately for Mr. Zeleke, this deadline is one that courts strictly enforce, even against pro se parties, as the Court must do here. *See, e.g.*, *Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 589–90 (8th Cir. 2003) (affirming that complaint mailed one day before but received five days after the ninety-day limit was untimely and therefore time-barred); *Frazier v. Vilsack*, 419 F. App'x 686, 689–90 (8th Cir. 2011) (per curiam) (unpublished) ("An employee who fails to bring a complaint in federal court following receipt of a right to sue letter within the time period allowed under Title VII is barred from ever bringing a federal claim related to that EEOC charge[.]"); *Robinette v. Promedica Pathology Labs*, No. 5:19-cv-2476, 2021 WL 3860520, at *2 (N.D. Ohio Aug. 30, 2021) ("Plaintiff's pro se status does not exempt her from compliance with Title VII's ninety-day limitations period for filing an action in federal court.").

6

Moreover, while the Court appreciates that Mr. Zeleke is self-represented, and even attempted in good faith to file an action in state court before the ninety days had expired, "the Eighth Circuit 'has recognized the principle that ignorance of legal rights does not toll a statute of limitations.'" *Juanes v. OneWorld Cmty. Health*, No. 8:23-cv-134, 2024 WL 5047843, at *2 (D. Neb. Dec. 9, 2024) (quoting *Turner v. Bowen*, 862 F.2d 708, 710 (8th Cir. 1988)). Nor does equitable tolling, which "is appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands," apply here.[4] *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir. 1990) (explaining that "[e]quitable tolling arises upon some positive misconduct by the party against whom it is asserted," including actions that "mis[lead] . . . or prevent [plaintiff] from discovering or pursuing his rights" (quoting *Debrunner v. Midway Equip. Co.*, 803 F.2d 950, 952 (8th Cir. 1986))); *Juanes*, 2024 WL 5047843, at *2 (noting that "a third-party's fraudulent or misleading conduct" may also warrant equitable tolling of the ninety-day deadline). Mr. Zeleke has not alleged that his failure to meet the ninety-day deadline was caused by something beyond his control, as the case law requires.

For these reasons, the Court dismisses Mr. Zeleke's ADA claims (Counts 1 and 2) with prejudice. *See Johnson v. United Ground Express Inc.*, No. 23-cv-3079 (PJS/LIB),

---

[4] Early in the case, Mr. Zeleke filed a Motion for Equitable Tolling, requesting that the Court "apply the doctrine of equitable tolling to the 90-day Right to Sue deadline issued by the [EEOC]." (Dkt. 3 at 1.) United States Magistrate Judge Shannon G. Elkins denied the Motion without prejudice upon concluding that "it would be an ill use of limited judicial resources to address" the issue when it "b[ore] directly on" a potentially dispositive issue that the Court would address when ruling on Defendants' Motion to Dismiss. (Dkt. 33 at 2.) So, the Court addresses that issue here.

2024 WL 3178123, at *11 n.12 (D. Minn. June 25, 2024) (noting that "the dismissal of a time barred claim is typically a dismissal with prejudice" (citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1020 (8th Cir. 2004)), *R&R adopted* 2024 WL 3526946 (D. Minn. July 24, 2024).

## II.    FMLA Claim (Count 5)

Next, Mr. Zeleke alleges that PWCC "interfered with, restrained, and denied [his] exercise of FMLA rights" by failing to provide "clear . . . eligibility guidance," "failing to implement the leave protections [he] requested and for which [he] provided notice," and terminating his employment under pretext. (Dkt. 36-1 ¶¶ 94–95.) Defendants argue that the claim must be dismissed because the FMLA is not applicable here.

The FMLA provides eligible employees with a certain amount of unpaid leave each year for qualifying medical and family reasons. *See* 29 U.S.C. § 2612(a)(1). However, "[t]he reach of the FMLA is relatively limited" and "only applies to, among other entities, private-sector employers of fifty or more employees." *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 936 n.2 (8th Cir. 2000) (citing 29 U.S.C. § 2611(4)(A)(i)). Here, Mr. Zeleke does not allege that PWCC has fifty employees; indeed, according to him, PWCC "report[s] [having] approximately 34 employees[.]" (Dkt. 36-1 ¶ 91.) Therefore, because Mr. Zeleke has not alleged that PWCC is an "employer" under the statute, Mr. Zeleke's FMLA claim must be dismissed. *See Smith v. Westchester County*, 769 F. Supp. 2d 448, 466 (S.D.N.Y. 2011) ("FMLA claims have been dismissed for failure to specifically plead that an employer is subject to the requirements of the FMLA.") (citing cases).

### III.    CFAA Claim (Count 6)

Defendants also seek dismissal of Mr. Zeleke's claim that they violated the Computer Fraud and Abuse Act by "gain[ing] access pathways into systems and devices associated with [him] without [his] consent" after terminating his employment. (Dkt. 36-1 ¶ 100.) Defendants argue that Mr. Zeleke has failed to allege facts that suggest the CFAA, which only applies to a "protected computer" as defined by statute, is implicated here. (Dkt. 40 at 25–27 (citing 18 U.S.C. § 1030(a).)

The CFAA prohibits the unauthorized access of certain computers for enumerated purposes. *See generally* 18 U.S.C. § 1030. Relevant here, the CFAA prohibits a person from

> knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

*Id.* § 1030(a)(4). The statute defines a "protected computer" as, among other things, one that "is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States[.]" *Id.* § 1030(e)(2)(B).

There are several pleading deficiencies related to this claim, but the Court highlights the most glaring issue. Although Mr. Zeleke claims, rather generally, that "Defendants' conduct was intentional, willful, and/or in reckless disregard of [his] rights" (Dkt. 36-1 ¶ 109), he does not allege that they did so "knowingly and *with intent to defraud*" as

9

required by the statute. 18 U.S.C. § 1030(a)(4) (emphasis added). Nor does he allege any facts from which the Court could reasonably infer an intent to defraud.

For these reasons, the Court concludes that Mr. Zeleke's CFAA claim must be dismissed.

IV.    **MHRA Claims (Counts 3 and 4)**

Having dismissed all of Mr. Zeleke's federal claims, all that remain are his MHRA claims for discrimination and failure to accommodate based on his disability, which are purely matters of state law.

Where, like here, a federal court "has 'dismissed all claims over which it has original jurisdiction,'" the court "has the discretionary power to decline jurisdiction" over the remaining state-law claims. *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) (quoting 28 U.S.C. § 1367(c)(3)). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims." *King v. City of Crestwood*, 899 F.3d 643, 651 (8th Cir. 2018) (quoting *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (cleaned up)). Finding no basis to disturb the usual balance of factors, the Court declines to exercise jurisdiction over Mr. Zeleke's remaining claims under the MHRA and dismisses them without prejudice.

**ORDER**

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. 37) is **GRANTED**;

10

2. Counts 1 and 2 (disability discrimination and failure to accommodate under the ADA) are **DISMISSED with prejudice** as time-barred;

3. Counts 3 and 4 are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c); and

4. Counts 5 and 6 are **DISMISSED without prejudice** for failure to state a claim.

**Let Judgment be entered accordingly.**

Date: July 24, 2026                    *s/Katherine M. Menendez*

Katherine M. Menendez
United States District Judge

11